IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>**RIVER WEST PLAZA - CHICAGO, LLC**<br>**d/b/a JOFFCO SQUARE,**<br><br>  Debtor.<br>_____<br><br>**FRANK SCHWAB**<br><br>  Appellant,<br>  v.<br><br>**RIVER WEST PLAZA - CHICAGO, LLC**<br>**d/b/a JOFFCO SQUARE, and BANK OF**<br>**AMERICA, N.A.,**<br><br>  Appellees. | No. 10 C 7227 |

## MEMORANDUM OPINION AND ORDER

Creditor-Appellant Frank Schwab ("Schwab") appeals from an order of the Bankruptcy Court for the Northern District of Illinois disallowing his Proof of Claim against Debtor-Appellee River West Plaza - Chicago, LLC d/b/a Joffco Square ("River West"). River West and appellee Bank of America, N.A. ("Bank of America") have moved to dismiss Schwab's appeal as moot. For the reasons discussed below, the motion is granted.

I.

In July 2009, River West, a real estate asset company that owned and operated Joffco Square, a shopping center in Chicago,

filed a voluntary Chapter 11 petition for bankruptcy. On July 18, 2010, Schwab filed a proof of claim in the action, asserting that, pursuant to an agreement with River West, he was entitled to twenty-five percent of River West's profits allegedly due to him. Prior to the bankruptcy filing, Schwab sued River West in Illinois state court for, *inter alia*, breach of contract in an attempt to collect the profits. He filed a *lis pendens* in December 2008, and after he filed for summary judgment, River West filed for bankruptcy. Once the bankruptcy proceedings were underway, litigation in the state court action was stayed.

Bank of America, which held a mortgage on the Joffco Square property, subsequently filed an objection to Schwab's proof of claim. On September 22, 2010, the bankruptcy court disallowed Schwab's claim in its entirety. During a hearing on the matter, the bankruptcy court stated that Schwab's claim was "essentially a claim to a disputed equity interest," and that Schwab's interest "is subordinate to any of the unsecured claims in this case." Transcript of Sept. 22, 2010 Hearing at 2:20-23. The bankruptcy court went on to observe that "[u]nsecured claims exhaust whatever assets are available," and that as a result, Schwab's claim was "not in a position to be allowed." Transcript of Sept. 22, 2010 Hearing at 2:23-25.

In November 2010, Schwab filed the instant appeal, presenting four questions for review: (1) whether the bankruptcy court erred

in denying Schwab's claim against River West; (2) whether the bankruptcy court erred in denying his motion to abstain from ruling on the Bank's objections to his claim; (3) whether the bankruptcy court erred in denying his motion for discovery; and (4) whether the bankruptcy court erred in denying his motion to subordinate the Bank's mortgage to his *lis pendens*.

The bankruptcy proceedings continued while the parties briefed the appeal. On October 4, 2010, Bank of America and River West filed a joint liquidation plan ("the joint plan"), which proposed that Joffco Square be sold via auction. Shortly thereafter, the auction was scheduled for December 15, 2010. However, it was not until December 9, 2010 that Schwab filed a motion in the bankruptcy court asking that the sale be stayed pending the outcome of the instant appeal. The next day, Schwab filed a motion in this Court asking to advance the briefing schedule, and to stay the sale of Joffco Square.

On December 14, 2010, I denied Schwab's request for a stay, holding that the motion was premature because there had been no ruling yet on the motion to stay in the bankruptcy court. However, I granted the motion to advance and reset the briefing schedule. That same day, the bankruptcy court entered an order denying Schwab's motion to stay. Schwab filed an objection to the joint plan. Notably, however, he did not appeal the bankruptcy court's denial of his motion to stay, and did not renew his request for a

stay in this Court.

On December 15, 2010, an auction was conducted for the purchase of Joffco Square. Inland Real Estate Corporation ("Inland") was the prevailing bidder. On December 22, 2010, the bankruptcy court held a joint confirmation and sale hearing. The bankruptcy court overruled Schwab's objection and entered an order confirming the joint plan (the "confirmation order"). The bankruptcy court also entered an order approving the sale of debtor's assets ("the sale approval order"), including Joffco Square, to Inland.

On January 11, 2011, the joint plan became effective. The sale of Joffco Square to Inland was closed pursuant to the sale approval order. On February 9, 2011, the Bankruptcy Court held a post-confirmation status hearing regarding any outstanding matters in the bankruptcy case. Schwab never appealed or sought to stay the confirmation order or the sale approval order. Neither Schwab nor his counsel attended the post-confirmation hearing.

It was also on February 9, 2010 that, having already filed their respective responses to Schwab's brief on appeal, River West and Bank of America filed a joint motion to dismiss the appeal. Citing 11 U.S.C. § 363(m), they contend that since Schwab failed to obtain a stay, his appeal is moot. I agree.

Section 363 provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section

of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). As the Seventh Circuit explained, under section 363(m), "when a party challenges a bankruptcy court's order authorizing the sale of estate property to a good faith purchaser, it must obtain a stay pending appeal or the appeal becomes moot once the sale is made." *Matter of Lloyd*, 37 F.3d 271, 273 (7th Cir. 1994). Here, Schwab does not dispute that Inland was a good faith purchaser; and, as already noted, he never obtained a stay of the sale. As a result, the appeal is moot.[1]

Schwab's attempts to avoid this conclusion are unavailing. He first argues that section 363(m) does not apply to the sale at issue in this case because he has a lien on the property and, he maintains, section 363(m) does not address or authorize "the stripping of liens." Schwab Resp. to Mot. to Dismiss at 1. One problem with this argument is that Schwab does not have a lien on the property. Despite Schwab's insistence to the contrary, the fact that he filed a *lis pendens* does not give him a lien. Rather,

---

[1] I note that prior to his December 9, 2010, stay motion in the bankruptcy court, Schwab filed a motion to abstain, in which he asked the bankruptcy court not to rule on Bank of America's objections to his proof of claim and instead to remand the matter back to the state court. In the alternative, the motion asked for a stay. Schwab appealed the denial of the motion to abstain, but he did not appeal the bankruptcy court's denial of his request for a stay.

as the Seventh Circuit has explained, "the Illinois *lis pendens* statute does not give the filer a lien, for filing requires neither the title holder's consent nor judicial intervention. The *lis pendens* just gives notice to purchasers of the land that there may be superior interests." *Matter of Leonard*, 125 F.3d 543, 545 (7th Cir. 1997) (citation omitted).

Moreover, in its September 22, 2010 order affirming Bank of America's objection to Schwab's proof of claim, the bankruptcy court recharacterized Schwab's interest in the property as one of equity rather than debt, and concluded that Schwab's interest in the property was subordinate to Bank of America's mortgage. Schwab insists that the bankruptcy court's recharacterization was erroneous, but his arguments are unpersausive. Courts have looked to a multitude of factors in determining whether a transaction labeled as a loan should be recharacterized as an equity investment. *See, e.g., In re Outboard Marine Corp.*, No. 02 C 1594, 01 A 0471, 00 B 37405, 2003 WL 21697357, (N.D. Ill. Jan. 2, 2003) (enumerating thirteen individual factors). "This is a largely factual determination, and no single factor is controlling or decisive." *In re Gluth Bros. Const., Inc.*, 424 B.R. 379, 395 (Bkrtcy. N.D. Ill. 2009). While the bankruptcy court's legal conclusions are reviewed de novo, its factual findings will be reversed only if they are clearly erroneous. *In re Outboard Marine Corp.*, 386 F.3d 824, 827 (7th Cir. 2004).

The bankruptcy court did not explain the basis for its determination. Nevertheless, its conclusion is supported by the record. *Matter of Oil Spill by Amoco Cadiz Off Coast of France on March 16, 1978*, 954 F.2d 1279, 1322 (7th Cir. 1992) (although the district court did not state reasons for its holding, the decision was not clearly erroneous since good reasons were available). The evidence comes chiefly from Schwab's own statements -- particularly, assertions he made in support of his summary judgment motion in the state court litigation. For example, Schwab states that he has a "partnership interest" in River West's properties, and that he was treated as a partner of River West for tax purposes. *Cf.* 11 U.S.C. § 101(16) ("The term 'equity security' means . . . interest of a limited partner in a limited partnership."). In fact, Schwab himself characterizes his interest as one of equity, stating that he obtained an option to purchase the Joffco Square property and had offered it to Joffe in "exchange for some equity position in the project." *See* Mot. Summ. J. (273-2) ¶ 10.

But even assuming that Schwab did have a lien on the property, his argument that the lien cannot be stripped under section 363(m) is mistaken. For as River West and Bank of America point out, the sale of the property was effected pursuant to section 363(f) of the Bankruptcy Code, not section 363(m), and section 363(f) specifically allows (provided that various conditions not at issue

here are met) a "trustee [to] sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate."

Schwab's remaining arguments likewise fail. For example, he argues that, by its own terms, the bankruptcy court's December 22, 2010 confirmation order does not purport to strip him of his putative lien. Specifically, he cites a provision of the confirmation order which states that the sale of the property "shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax." Conf. Order, ¶ 3. Schwab emphasizes the fact that the provision does not say that the property shall not be subject to any liens or claims. However, other provisions of the confirmation order make clear that, to the extent that any claims on the property remain, they do not belong to Schwab. *See, e.g.*, Conf. Order ¶ 11 ("At the time of entry of this Confirmation Order, only one claim objection, made by Debtor and the Bank to a claim asserted by Greenberg Farrow Architecture, Inc. ("GFA"), has yet to be resolved by this Court. Pursuant to section 1 0.3 of the Joint Plan, Debtor shall deposit in the Disputed Claims Reserve the Distribution reserved for GFA's asserted claim pending determination of GFA's entitlement, if any, to such Distribution or any portion thereof.").

More importantly, the confirmation order states that the obligations of the various parties are ultimately determined by the

sale approval order. *See* Conf. Order ¶ 4 ("[T]he Sale Order shall govern the agreements between and obligations of the Debtor, the Bank, and the Prevailing Bidder . . . with respect to the sale of the Property and the terms of such sale."). The sale approval order, in turn, announces clearly, and in several places, that the transfer of debtor's assets is "free and clear of liens, claims, encumbrances, and interests." *See, e.g.*, Sale Approval Order ¶ 3 ("Pursuant to Bankruptcy Code section 363(f), upon the Closing under the Purchase Agreement, the transfer of the Property to Purchaser will be legal, valid and effective transfers and shall vest Purchaser with all right, title and interest of Debtor in and to the Property, free and clear of all Interests, with all such Interests in and upon the Property to be unconditionally released, discharged and terminated.").

Schwab's final argument is that section 363(m) does not apply in this case because he does not seek to invalidate the sale but instead requests only a share of the proceeds from the sale. There is no need to call back the distributed funds, Schwab contends, his share can be deducted from the amount disbursed to Bank of America. An identical argument has been raised in a number of cases and has consistently been rejected. *See, e.g., Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490 (3d Cir. 1998); *In re The Charter Co.*, 829 F.2d 1054, 1056 (11th Cir. 1987) ("Appellant's second objection is that it does not seek to affect the validity of

the sale, but only to obtain a refund of a portion of the sale price. This objection also fails. One cannot challenge the validity of a central element of a purchase, the sale price, without challenging the validity of the sale itself. We fail to see how this court could order a $5 million refund to the purchaser without affecting the validity of the sale."); *In re Metaldyne Corp.*, 421 B.R. 620, 626 (S.D.N.Y. 2009).

The same result is compelled here. Schwab argues that his interest in the property is worth roughly $17 million. There is little reason to believe that Bank of America would have agreed to the terms of the sale if its portion of the proceeds was potentially encumbered by a $17 million obligation to Schwab. In asserting that he is entitled to such a share of the sale's proceeds, Schwab is effectively challenging the sale as a whole.

II.

For these reasons, the debtor's and the Bank's motion to dismiss Schwab's appeal is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: April 11, 2011